**Hughes**
**Hubbard**
**& Reed**

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Office:+1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

Derek J.T. Adler
Partner
Direct Dial: +1 (212) 837-6086
Direct Fax: +1 (212) 299-6086
derek.adler@hugheshubbard.com

April 22, 2022

VIA ECF

Hon. P. Kevin Castel
United States District Judge
United States Courthouse
500 Pearl Street, Courtroom 11D
New York, New York 10007

> Re:  *In the Matter of the* Ex Parte *Application of the Upper Brook Companies for*
> *an Order Directing Discovery in Aid of a Foreign Proceeding Pursuant to*
> *28 U.S.C. § 1782*, Misc. Case No. 22-mc-97 (PKC).

Dear Judge Castel:

This firm represents Palladyne International Asset Management B.V. and its affiliates
(collectively "Palladyne") in relation to the above-referenced matter.  To the best of our
knowledge, no conference has yet been scheduled.

Pursuant to the April 11, 2022 Order granting the application for discovery, the Court
ordered Applicants to file on the public court docket versions of their submissions from which
bank account numbers and other unique bank account identifiers have been redacted.  We now
write, pursuant to the Court's endorsement on our letter of April 15, 2022 (ECF 16) and Rule
5(B) of the Court's Individual Practices, to move for an order directing that additional redactions
be made to certain of Applicants' submissions before they are publicly filed.

In summary, Palladyne requests the redaction of four categories of information:
(1) confidential information Palladyne provided to Ernst & Young LLP ("EY"), as part of its
voluntary cooperation with a forensic audit, such materials having been disclosed to EY on the
express understanding that such information would be maintained as confidential;
(2) confidential materials from an ongoing Dutch criminal investigation that appear to have been
disclosed to Applicants by Dutch prosecutors, which are akin to US grand jury materials,
(3) non-public summonses (i.e. complaints) issued in Dutch proceedings; (4) correspondence
with and determinations by Cayman Islands regulatory authorities, which are required to be kept
confidential under Cayman Islands law, and (5) investment management agreements signed

between Palladyne and Applicants, which are a proprietary form of agreement including competitively sensitive information and should be considered to reflect trade secrets.

In support of the present application, we file herewith (1) my declaration of today's date, attaching versions of the relevant documents highlighted to show proposed redactions, (2) a declaration of today's date from Lily Yeo, Palladyne's Chief Corporate Strategy and Business Development Officer, and (3) a declaration of today's date from Jaap de Keijzer, Palladyne's lawyer in the Netherlands, providing relevant information about the Dutch proceedings and applicable principles of foreign law.

### Applicants' Position/Scheduling

We have conferred with counsel for Applicants about the general nature of and grounds for the proposed redactions and have been informed that, based on the disclosed grounds for the proposed redactions, Applicants intend to submit papers in opposition. We have also informed counsel for Applicants that Palladyne intends to file a pre-motion letter in support of a motion to vacate the April 11 order and quash the subpoena to JP Morgan by Friday April 29, 2022.

The parties propose that submissions for these two applications be consolidated on the following schedule: (1) Palladyne to submit pre-motion letter on motion to vacate/quash on or before April 29; (2) Applicants to submit opposition to motion to redact and motion to vacate/quash on or before May 16, and (3) Palladyne to submit reply on or before May 24.

In the alternative, if the Court would prefer the applications to proceed on separate tracks, the parties propose the following schedule: (1) Applicants to file opposition to motion to redact on or before May 4, with Palladyne reply due May 6, and (2) Applicants to respond to Palladyne's April 29 application to vacate/quash on or before May 16, with Palladyne's reply due May 19.

Regardless of which schedule is adopted, the parties agree that JP Morgan should not produce documents until further order of the Court and that Applicants will inform JP Morgan of this.

### Background

Palladyne is part of a Dutch investment management group that has been in business for decades. In 2006 and 2007, the Libyan Investment Authority and two other Libyan government entities (collectively, the "LIA") invested some $700 million into investment funds established and managed by Palladyne. In conjunction with these investments, the LIA signed a written master services agreement and written subscription agreements pursuant to which LIA (upon payment) would be issued shares by the Palladyne investment fund and Palladyne, as investment manager, would be entitled to withdraw a percentage quarterly fee as compensation for its services. Contrary to Applicants' assertions, the percentage fee was in line with industry standards.

Since the overthrow of the Gaddafi government in 2011, funds of the LIA and the Libyan state have been subject to strict UN international sanctions controls. After the sanctions were implemented, Palladyne obtained the necessary sanctions licenses and permissions to continue managing the investment portfolio of the investment funds to which LIA subscribed, and to

continue to charge to the investment funds the fees provided under its investment management agreements.  Under Palladyne's stewardship, the value of the funds entrusted to Palladyne's investment model and management has grown to over one billion dollars.  As the Dutch courts have noted, these funds are securely held, for the benefit of the Libyan people, in an asset protection vehicle created under Dutch law.

The disputes between the Applicants and Palladyne have arisen due to the unfortunate fact that Libya remains without an established, internationally-recognized sovereign government. The principals of the Applicants—Messrs Buruni and Jehani—belong to one of two factions that have sought to gain control over Libyan sovereign assets held outside Libya.  For almost ten years, they have been engaged in a campaign seeking to oust Palladyne and take control of the assets it manages on behalf of the Libyan state and people.

Purporting to exercise the authority of the LIA, Applicants sought to terminate the investment management agreements between the LIA and Palladyne in 2014.  The primary issue being contested in the Dutch proceedings is whether Palladyne has been entitled to collect its contractually-prescribed fee since that time.  Although Applicants make various suggestions of wrongdoing and misappropriation against Palladyne and its principals, these allegations are not the subject of the Dutch proceedings.  Nor, after almost ten years under investigation, have Palladyne or its principals ever been charged with any crime.  Meanwhile, the Chairman and CEO of LIA with whom the applicants purportedly cooperate, is subject to an international arrest warrant for large scale corruption and money-laundering.

### The EY Forensic Report

Applicants have submitted a Declaration from Richard Abbey, a partner in EY.  The bulk of Mr. Abbey's declaration consists of information gathered during the course of a forensic audit of Palladyne, conducted on behalf the LIA.  As set forth in Ms. Yeo's Declaration, Palladyne voluntarily cooperated with this audit based on the express understanding that the materials and information it provided to EY would be kept confidential.

Palladyne therefore seeks redaction of the relevant paragraphs of Mr. Abbey's Declaration, as well as the filing under seal of Appendix B to Mr. Abbey's Declaration (Adler Decl. Exs. 9-10).  Palladyne also requests redaction of relevant references in Applicant's Memorandum of Law.  (ECF 3, Adler Decl. Ex. 2.)

### The Dutch Prosecutor's Report

Mr. Abbey also provides information from a report prepared by the Dutch prosecutor's based on information collected during a criminal investigation of Palladyne that, although commenced in 2013, remains technically pending.  Mr. Abbey does not state how he came into the possession of such material.  As set forth in Mr. de Keijzer's Declaration, these materials are non-public and are to be maintained as confidential under Dutch law.  We note also that these materials include names and other information pertaining to family members of Mr. Abudher

who remain in Libya, where the rule of law is not strong at the moment.[1]  Redaction and sealing are warranted to avoid subjecting them to unnecessary risk.

Palladyne therefore seeks to have Appendix C to Mr. Abbey's Declaration filed under seal, and the information coming from the prosecutor's report redacted from the body of his Declaration.  (Adler Decl. Exs. 9 & 11.)  Palladyne also requests redaction of relevant references in Applicant's Memorandum of Law (ECF 3, Adler Decl. Ex. 2.)

### Summonses Issued in Dutch Proceedings

Exhibits 5 and 10 to Mr. Miller's Declaration are the "summonses" Applicants have filed in the Dutch court to initiate their actions against Palladyne.  In Dutch procedure, a summons is the equivalent of a complaint in US litigation, i.e. the document that sets for the factual and legal basis alleged in support of the claim.  As noted by Mr. de Keijzer in his Declaration, summonses are not publicly available and are considered confidential.  In addition, these summonses contain much information that has been taken directly from the materials Applicants obtained from the Dutch prosecutor's office, as set forth above.

Palladyne therefore requests that the two Dutch summonses, Exhibits 5 and 10 to Mr. Miller's Declaration (Adler Decl. Exs 4 & 8), be filed under seal.

### Cayman Islands Regulatory Correspondence

Exhibits 1 and 2 to Mr. Kennedy's Declaration consist of correspondence with Cayman Islands regulators concerning Palladyne's sanctions licenses, including a notice from the Governor of the Cayman Islands pertaining to Palladyne's status.  The Cayman Islands follow strict confidentiality laws.  Indeed, Palladyne believes it was a breach of Cayman Islands law for such materials to be disclosed to Applicants, and is considering its potential remedies in that regard.

Palladyne therefore requests that Exhibits A and B to Mr. Kennedy's Declaration (Adler Decl. Exs. 13 & 14) be filed under seal, and that Mr. Kennedy's Declaration be redacted to remove quotations from and references to the content of these materials (Adler Decl. Ex. 12).

### Palladyne/LIA Investment Management Agreements

Attached as Exhibits 6, 7 and 8 to Mr. Miller's Declaration are the investment management agreements signed between Applicants and Palladyne.  Paragraph 9 of each of these agreements imposes a two-way duty of confidentiality between the parties.  (Adler Decl. Exs. 5, 6, &7, ¶ 9.)  In addition the terms upon which Palladyne provides investment management services to its clients, and the fees it charges for those services are confidential, competitively sensitive trade secrets.

Palladyne therefore requests that Exhibits 6-8 to Mr. Miller's Declaration (Adler Decl. Exs. 5-7) be filed under seal.

---

[1]  *See, e.g.* https://www.state.gov/reports/2021-country-reports-on-human-rights-practices/libya.

**Inclusion of Large Volume of Materials Not Pertinent to the Application**

As noted above, the dispute between the parties in the Netherlands is limited to a narrow issue, i.e., whether Palladyne has been entitled to collect fees for its investment management services since Applicants purported to terminate the LIA/Palladyne agreements in 2014.  But in support of their application in this Court, Applicants have included a huge volume of materials that are not pertinent to the relief they seek here.  Given the history of Applicants' long public campaign against Palladyne, there is reason to infer that they have included inflammatory and impertinent material in their filings for the precise purpose of getting that material out in public in a context that is arguably protected by judicial privilege.  The fact that the materials sought to be redacted or filed under seal are largely not pertinent to the application is an independent basis to grant Palladyne's motion to file the materials referred to above in redacted form or under seal.

Respectfully,

Derek J.T. Adler

cc:   Michael C. Miller, Esq.
       Counsel for Applicants