**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN THE MATTER OF THE *EX PARTE*
APPLICATION OF THE UPPER BROOK
COMPANIES FOR AN ORDER DIRECTING
DISCOVERY IN AID OF A FOREIGN
PROCEEDING PURSUANT TO 28 U.S.C. §1782

Misc. Case No.: 22-mc-97(PKC)

**MEMORANDUM OF LAW IN SUPPORT OF PALLADYNE'S MOTION TO REDACT**
**AND/OR FILE CERTAIN DOCUMENTS UNDER SEAL**

July 14, 2022

Derek J.T. Adler
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone:  212-837-6000
Fax:  212-422-4726
derek.adler@hugheshubbard.com

*Attorneys for Palladyne International Asset*
*Management B.V. and its affiliates*

103239673_7

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

I.     MATERIALS FROM EY'S FORENSIC EXAMINATION OF PALLADYNE'S
CONFIDENTIAL BOOKS AND RECORDS SHOULD BE FILED UNDER
SEAL AND INFORMATION FROM THE EY REPORT REDACTED FROM
DECLARATIONS AND MEMORANDA OF LAW. .......................................................2

     A.     The EY Report is Not a "Judicial Document." ......................................................3

     B.     Any Presumption of Access to the EY Report is Low. ..........................................6

     C.     Countervailing Factors Favor Sealing and Redaction of the EY Report. ..............7

II.     MATERIALS FROM THE REPORT PREPARED BY THE DUTCH
PROSECUTOR'S OFFICE SHOULD BE FILED UNDER SEAL AND
INFORMATION FROM THE DUTCH PROSECUTOR REPORT REDACTED
FROM DECLARATIONS AND MEMORANDA OF LAW. .........................................8

     A.     The Dutch Prosecutor's Report is Not a "Judicial Document." ...........................9

     B.     Any Presumption of Access to the Dutch Prosecutor's Report is Low. ................9

     C.     Countervailing Factors Favor Sealing and Redaction of the Dutch
Prosecutor's Report. ...........................................................................................10

III.     MATERIALS FROM THE NON-PUBLIC SUMMONSES ISSUED IN THE
DUTCH PROCEEDINGS SHOULD BE FILED UNDER SEAL AND
INFORMATION FROM THE SUMMONSES REDACTED FROM
DECLARATIONS AND MEMORANDA OF LAW. ....................................................11

     A.     Although They Can Perhaps be Considered "Judicial Documents," Any
Presumption of Access to the Dutch Summonses is Low. ...................................12

     B.     Countervailing Factors Favor Sealing and Redaction of the Dutch
Summonses. ........................................................................................................12

IV.     MATERIALS FROM THE CORRESPONDENCE WITH AND
DETERMINATIONS BY THE CAYMAN ISLANDS REGULATORY
AUTHORITIES SHOULD BE FILED UNDER SEAL AND RELATED
INFORMATION REDACTED FROM DECLARATIONS AND MEMORANDA
OF LAW. ..................................................................................................................13

     A.     The Correspondence with and Determinations by the Cayman Islands
Regulatory Authorities are Not "Judicial Documents." ......................................13

i

V.      THE INVESTMENT MANAGEMENT AGREEMENTS BETWEEN
        PALLADYNE AND THE UPPER BROOK COMPANIES SHOULD BE FILED
        UNDER SEAL. ...................................................................................................14

        A.      The Investment Management Agreements are Not "Judicial Documents." ..........15

        B.      Any Presumption of Access to the Investment Management Agreements is
                Low. ..........................................................................................................15

        C.      Countervailing Factors Favor Sealing and Redaction of the Investment
                Management Agreements. ...................................................................................15

VI.     INFORMATION THAT CAN BE USED TO IDENTIFY PALLADYNE'S
        BANK ACCOUNTS SHOULD BE REDACTED FROM THE PUBLIC CASE
        FILINGS. ...........................................................................................................16

CONCLUSION...................................................................................................18

103239673_7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Accent Delight Int'l Ltd.*, No. 16-MC-125, 2018 WL 2849724 (S.D.N.Y. June 11, 2018), *aff'd*, 791 F. App'x 247 (2d Cir. 2019)............................................6

*Alcon Vision, LLC v. Lens.com*, No. 18-CV-0407, 2020 WL 3791865 (E.D.N.Y. July 7, 2020)..................................................................................................... 14, 15

*Alexander Interactive, Inc. v. Adorama, Inc.*, No. 12-CIV-6608, 2014 WL 4346174 (S.D.N.Y. Sept. 2, 2014) ...............................................................6

*Bernsten v. O'Reilly*, 307 F. Supp. 3d 161 (S.D.N.Y. 2018)........................................14

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76 (2d Cir. 2012)............................4

*Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019) ............................................................3

*City of Providence v. BATS Glob. Mkts., Inc.*, No. 14-CV-2811, 2022 WL 539438 (S.D.N.Y. Feb. 23, 2022)..................................................................................16

*Joy v. North*, 692 F.2d 880 (2d Cir. 1982) ...................................................................6

*Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006)...................................*passim*

*Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156 (2d Cir. 2013).....................................14

*In re Pishevar*, No. 119-MC-00503, 2020 WL 1862586 (S.D.N.Y. Apr. 14, 2020)...................10

*Prescient Acquisition Grp., Inc. v. MJ Pub. Tr.*, 487 F. Supp. 2d 374 (S.D.N.Y. 2007)...........................................................................................................17

*Sec. & Exch. Comm'n v. Telegram Grp. Inc.*, No. 19-CV-9439 (PKC), 2020 WL 3264264 (S.D.N.Y. June 17, 2020).....................................................................17

*Stern v. Cosby*, 529 F. Supp. 2d 417 (S.D.N.Y. 2007)..................................................6

*Strauss v. Credit Lyonnais, S.A.*, No. 06-CV-702, 2011 WL 4736359 (E.D.N.Y. Oct. 6, 2011) ......................................................................................................17

*Travelers Indem. Co. v. Excalibur Reinsurance Corp.*, No. 3:11-CV-1209, 2013 WL 4012772 (D. Conn. Aug. 5, 2013)...........................................................7

*U.S. v. Amodeo*, 44 F.3d 141 (2d Cir. 1995) ..............................................................3, 10

*U.S. v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995) ......................................................1, 6, 7, 14

103239673_7

*U.S. v. Basciano*, No. 03-CR-00929, 2008 WL 123952 (E.D.N.Y. Jan. 11, 2008)......................10

*U.S. v. Sattar*, 471 F. Supp. 2d 380 (S.D.N.Y. 2006) ....................................................................6

**Statutes and Rules**

28 U.S.C. § 1782(a) .........................................................................................................................4

Dutch Code of Criminal Procedure..............................................................................................10

Fed. R. Civ. P. 5.2(a)........................................................................................................................7

Fed. R. Civ. P. 5.4(a)......................................................................................................................16

**Miscellaneous**

*2021 Country Reports on Human Rights Practices: Libya*, U.S. Dep't of State..........................11

103239673_7

## INTRODUCTION

Pursuant to the Memo Endorsement entered April 26, 2022, the Court gave Palladyne International Asset Management (together with its affiliates, "Palladyne") leave to "file a motion to seal specific portions of the application showing why sealing complies with *Lugosch v. Pyramid* (2d Cir. 2006) at any time."  (ECF 23.)  Now that Palladyne's Motion to Vacate April 11, 2022 Order and Quash J.P. Morgan Subpoena is fully briefed, Palladyne hereby moves to redact certain information and seal certain documents filed by Applicants as part of their original application, as well as documents filed in relation to Palladyne's pending motion.

Under *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006), courts in this circuit apply a three-step analysis in determining whether materials should be filed under seal or redacted from publicly filed documents.  First, the court must determine if the document in question is in fact a "judicial document," i.e., a document "relevant to the performance of the judicial function and useful in the judicial process," *id.* at 119, such that the presumption of public access attaches to it.  Assuming a presumption of public access attaches to the document in question, the court must next determine the weight of the presumption based on "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts."  *Id.*  Finally, the court must balance that weight against competing considerations including "the privacy interests of those resisting disclosure."  *Id.* at 120 (quoting *U.S. v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) ("*Amodeo II*").

Palladyne moves for the redaction and/or sealing of six categories of information: (1) confidential information Palladyne provided to Ernst & Young LLP ("EY"), as part of its voluntary cooperation with a forensic audit, such materials having been disclosed to EY on the

express understanding that such information would be maintained as confidential;
(2) confidential materials from a report prepared by the Dutch Public Prosecutor's Office that
appear to have been disclosed to the Upper Brook Companies by Dutch prosecutors, which are
akin to U.S. grand jury materials, (3) non-public summonses (i.e. complaints) issued in Dutch
proceedings; (4) correspondence with and determinations by Cayman Islands regulatory
authorities, which are required to be kept confidential under Cayman Islands law, (5) the
investment management agreements signed between Palladyne and the Upper Brook Companies,
which are a proprietary form of agreement that includes competitively sensitive information and
trade secrets, and (6) the name of the banking institution where Palladyne maintains its account
in the Netherlands.  Application of the *Lugosch* analysis here shows that these six categories of
materials and information should not be made public.

      In support of this motion, Palladyne relies on the Declaration of Lily Yeo, dated and filed
April 22, 2022 (ECF 19) and the Declaration of Jaap de Keijzer, dated and filed April 22, 2022
(ECF 20).  The documents with respect to which Palladyne seeks redaction or sealing, with
proposed redactions, are annexed to the Declaration of Derek J.T. Adler, dated and filed April
22, 2022 (ECF 21), and the Second Declaration of Derek J.T. Adler, dated and filed
contemporaneously herewith.

### I.    MATERIALS FROM EY'S FORENSIC EXAMINATION OF PALLADYNE'S CONFIDENTIAL BOOKS AND RECORDS SHOULD BE FILED UNDER SEAL AND INFORMATION FROM THE EY REPORT REDACTED FROM DECLARATIONS AND MEMORANDA OF LAW.

      The Upper Brook Companies have submitted a Declaration from Mr. Richard Abbey, a
partner in EY, the bulk of which consists of information gathered during the course of a forensic
audit of Palladyne, conducted on behalf the Libyan Investment Authority ("EY Report").  The
information contained in the report consists of confidential financial and accounting information

2

of Palladyne.  As set forth in Ms. Yeo's first Declaration, Palladyne voluntarily cooperated with this audit based on the express understanding that the materials and information it provided to EY would be kept confidential and "any further distribution will require consent."  (ECF 19, Yeo Decl. ¶ 2; ECF 19, Yeo Decl. Ex. A at 3.)  Palladyne seeks redaction of the relevant paragraphs of Mr. Abbey's Declaration, as well as the filing under seal of Appendix B to Mr. Abbey's Declaration, which consists of confidential material provided by Palladyne pursuant to its forensic audit.  (ECF 21, Adler Decl. Exs. 9-10 (ECF 5 & 5-2)).  Palladyne also requests redaction of relevant references in Applicant's Memorandum of Law.  (ECF 21, Adler Decl. Ex. 2. (ECF 3))

### A.   The EY Report is Not a "Judicial Document."

In *Lugosh*, the Second Circuit noted that "[i]n order to be designated a judicial document, 'the item filed must be relevant to the performance of the judicial function and useful in the judicial process.'"  *Lugosch*, 435 F.3d at 119 (quoting *U.S. v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*")).  A document is "'relevant to the performance of the judicial function' if it would reasonably have the *tendency* to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision."  *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019) (emphasis in original).  "Accordingly, if in applying these standards, a court determines that documents filed by a party are *not* relevant to the performance of a judicial function, no presumption of public access attaches."  *Id.*  (emphasis in original).  "[T]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access."  *Amodeo I*, 44 F.3d at 145.

An application under Section 1782 for U.S. discovery for use in a foreign proceeding presents a somewhat unique scenario in that the district court will not be called upon to determine the merits of the dispute between the parties in the foreign proceeding.  In such context, the determination of whether a particular document is "relevant to the performance of a judicial function" should be based on the function the court performs and the elements it is required to evaluate in determining whether to grant relief under Section 1782, i.e. (1) whether the target of the proposed discovery is located in the district, (2) whether the documents sought are for use in a foreign proceeding, (3) whether the applicant is an "interested person", and (4) whether the court should exercise its discretion in favor of granting the requested discovery. 28 U.S.C. § 1782(a); *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012).

As Palladyne has demonstrated in the briefing on its Motion to Vacate April 11, 2022 Order and Quash J.P. Morgan Subpoena, the pending dispute between the parties in the Netherlands is limited to a narrow issue, i.e., whether Palladyne has been entitled to collect fees for its investment management services since the Upper Brook Companies purported to terminate the LIA/Palladyne agreements in 2014.  The Upper Brook Companies are currently controlled by representatives of a faction that is seeking to gain control over assets of the Libyan Investment Authority and the Libyan people, and who have engaged in lengthy public campaign seeking to oust Palladyne and take control of the Libyan assets it manages.  In support of their application in this Court, the Upper Brook Companies have made wide ranging allegations and included a large volume of materials that are not directly pertinent to the relief they seek here. Given the history of Applicants' public campaign against Palladyne, there is reason to infer that they have included inflammatory and impertinent material in their filings for the precise purpose

of getting that material out in public in a context that may arguably be protected by judicial proceeding privilege.

Mr. Abbey notes that the EY Report was prepared at the request of the Libyan Investment Authority to analyze flows of money through Palladyne's bank accounts.  (ECF 5, Abbey Decl. ¶ 5.)  Thus Mr. Abbey's Declaration presents a detailed accounting of movements of certain funds through those bank accounts.  (Mr. Abbey also refers to and relies on the confidential Dutch Prosecutor's report, discussed further below.)  The Upper Brook Companies rely on the EY analysis only to (1) support the undisputed fact that Palladyne deducted funds from the Upper Brook accounts to pay its contractually-agreed investment management fees, (2) identify Palladyne's Dutch bank account and confirm the target of discovery here—J.P. Morgan—is the U.S. correspondent for Palladyne's Dutch bank, and (3) demonstrate that some of the funds Palladyne received as investment management fees were subsequently paid to third parties. (ECF 3, Memorandum of Law in Support of the Upper Brook Companies' *Ex Parte* Application ("MOL"), at 9-10.)  Of these points, the only one that will assist the Court in determining whether to grant the Upper Brook Companies' application is establishing the basis for seeking disclosure from J.P. Morgan, i.e., the fact that it is the U.S. correspondent for Palladyne's Dutch bank.  Providing this information—the details of which would be subject to redaction in any event—could have been accomplished in one or two paragraphs, without any exhibits.  Thus the bulk of Mr. Abbey's Declaration, and the exhibits to that Declaration, should not be considered "judicial documents" because they do not contain information that will assist the Court in determining whether to grant Section 1782 relief.

**B.      Any Presumption of Access to the EY Report is Low.**

Assuming a particular item is determined to be a "judicial document," the court should then determine the weight of the presumption of access, *Amodeo II*, 71 F.3d at 1049, that is "whether the presumption is an especially strong one that can be overcome only by extraordinary circumstances or . . . is a low one that amounts to little more than a prediction of public access absent a countervailing reason or whether the presumption is somewhere in between." *Alexander Interactive, Inc. v. Adorama, Inc.*, No. 12-CIV-6608, 2014 WL 4346174, at *1 (S.D.N.Y. Sept. 2, 2014) (quoting *Stern v. Cosby*, 529 F. Supp. 2d 417, 420 (S.D.N.Y. 2007) (internal quotation marks omitted).

The Second Circuit has stated that "the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts."  *Amodeo II*, 71 F.3d at 1049.  Some documents "directly affect an adjudication" and play a significant role in "determining litigants' substantive rights"; these are entitled to the strongest presumption of public access.  *U.S. v. Sattar*, 471 F. Supp. 2d 380, 385–86 (S.D.N.Y. 2006) (internal citation omitted) (citing *Joy v. North*, 692 F.2d 880, 894 (2d Cir. 1982) (report submitted to court as principal basis for summary judgment motion entitled to strong presumption of access)).  Other documents "play only a negligible role in the performance of Article III duties," such as documents passed between parties in discovery, and thus are entitled to a "presumption [that] is low and amounts to little more than a prediction of public access absent a countervailing reason." *Id.* (internal citation omitted); *see also In re Accent Delight Int'l Ltd.*, No. 16-MC-125, 2018 WL 2849724, at *6 (S.D.N.Y. June 11, 2018), *aff'd*, 791 F. App'x 247 (2d Cir. 2019) ("Although there is a presumption in favor of public access to judicial documents, in reaching its decisions above the Court did not need to reference or otherwise rely on the sealed exhibits or the redacted

portions of Petitioners' application and memorandum of law. At best, therefore, the weight of any presumption is limited.").

Here, the information from the EY Report surely falls at the latter end of the continuum. The bulk of the material Mr. Abbey presents has no relevance at all to the elements of the Upper Brook Companies' claim for relief under Section 1782. As noted above, the sole relevance of these materials is to demonstrate why the Upper Brook Companies seek information regarding a particular account at J.P. Morgan in New York. Although this is indeed germane to whether the Court should grant the requested discovery, the identifying information for the bank account itself is subject to protection from disclosure on multiple grounds, including under Fed. R. Civ. P. 5.2(a).

### C.  Countervailing Factors Favor Sealing and Redaction of the EY Report.

Insofar as there may be a presumption of access to a particular document, high or low, the court should then balance this against countervailing factors, including "the privacy interests of those resisting disclosure." *Lugosch*, 435 F.3d at 120; *Amodeo II*, 71 F.3d at 1050.

The materials addressed in the EY report and Mr. Miller's declaration are plainly internal financial and accounting information belonging to Palladyne. As set forth in Ms. Yeo's First Declaration, Palladyne voluntarily cooperated with EY's forensic examination based on the express understanding that the materials and information it provided to EY would be kept confidential and "any further distribution will require consent." (ECF 19, Yeo Decl. ¶ 2; *Id.* Ex. A at 3.) *Cf. Travelers Indem. Co. v. Excalibur Reinsurance Corp.*, No. 3:11-CV-1209, 2013 WL 4012772, at *6 (D. Conn. Aug. 5, 2013) (Court found sealing exhibits was "supported by 'clear and compelling reasons'" such as "sensitive business information" and was "narrowly tailored to serve those reasons" where the movant represented the information contained in such exhibits

was furnished to nonmovant under the express condition that nonmovant maintains its

confidentiality).  And, even if Palladyne's financial information was obtained, with Palladyne's

cooperation, from other sources, it consists of non-public financial and accounting information as

to which Palladyne has a strong privacy interest.

## II.   MATERIALS FROM THE REPORT PREPARED BY THE DUTCH PROSECUTOR'S OFFICE SHOULD BE FILED UNDER SEAL AND INFORMATION FROM THE DUTCH PROSECUTOR REPORT REDACTED FROM DECLARATIONS AND MEMORANDA OF LAW.

Mr. Abbey's Declaration also includes material from a report prepared by the Dutch

Prosecutor's Office based on information collected during a criminal investigation of Palladyne

that, although commenced in 2013, has never resulted in any charges against Palladyne or its

principals.  The report itself is attached as Appendix C to Mr. Abbey's Declaration.  (ECF 5-3,

Abbey Decl.)  Mr. Abbey does not state how he came into the possession of this material.  As set

forth in Mr. de Keijzer's First Declaration, these materials are non-public and are maintained as

confidential under Dutch law. (ECF 20, de Keijzer Decl. ¶ 2.)  Palladyne therefore seeks to have

Appendix C to Mr. Abbey's Declaration filed under seal, and the information coming from the

Prosecutor's Report redacted from the body of his Declaration.  (ECF 21, Adler Decl. Exs. 9 &

11 (ECF 5 & 5-3).)  Palladyne also requests redaction of relevant references to the same in

Applicant's Memorandum of Law. (ECF 21, Adler Decl. Ex. 2. at 4 (ECF 3).)

Furthermore, Exhibit C to the Second Rutten Declaration filed in opposition to

Palladyne's Motion to Vacate April 11, 2022 Order and Quash J.P. Morgan Subpoena should

also be filed under seal.  (ECF 29, Second Rutten Decl. Ex. C.)  In that letter, Attorney Kok

requests that the Upper Brook Companies "confirm to [him] in writing that the copies of

documents and information obtained from documents from the Dutch investigation to be

obtained will not be shared in any way" with certain individuals.  *Id.*  For this reason alone, any

and all references to information obtained from the documents from the Dutch Prosecutor's office and certainly the documents themselves could not be publicly filed.  If the Court allowed public access to such information, then those individuals would be able to readily access that information from the federal electronic filing system.

### A.    The Dutch Prosecutor's Report is Not a "Judicial Document."

It appears the Upper Brook Companies have provided the Dutch Prosecutor's Report to the Court only to demonstrate that the allegations contained in that report were the basis for its decision, in 2014, to purport to terminate the investment management agreements with Palladyne.  (ECF 3, MOL at 4.)  Neither that decision, nor the reasons for it, is in any way relevant to the elements the Court must address in order to decide this Section 1782 application. Therefore, the Dutch Prosecutor's Report cannot be considered a "judicial document" in this context.

### B.    Any Presumption of Access to the Dutch Prosecutor's Report is Low.

Insofar as the Court may find, contrary to the above arguments, that the Dutch Prosecutor's Report should in fact be considered a judicial document, the presumption of public access to it should be at the low end of the spectrum because it will play little or no role in the Court's determination of the Upper Brook Companies' application for U.S. discovery.  The present application does not require the Court to pass judgment on the various suggestions of misconduct contained in the Dutch Prosecutor's Report—none of them ever charged or proven. The contents of that report are simply irrelevant to the Upper Brook Companies' application for U.S. discovery.

**C.      Countervailing Factors Favor Sealing and Redaction of the Dutch Prosecutor's Report.**

Strong countervailing reasons would outweigh any low presumption of access to the Dutch Prosecutor Report in this case.  The report contains information that was gathered via searches conducted by law enforcement in the context of a criminal investigation that has never led to the filing of any charges, i.e., the equivalent of a U.S. grand jury investigation.  As stated in Mr. de Keijzer's Declaration, "[o]nly a victim or injured party in a criminal investigation may at his or her request receive information from the public prosecutor (article 51b, paragraph 1 of the Dutch Code of Criminal Procedure)."  (ECF 20, de Keijzer Decl. ¶ 2.)  As Mr. de Keijzer further states, "[t]o my knowledge neither the Upper Brook Companies nor LIA have ever been determined by the Dutch public prosecutor to be a victim or injured party.  As a consequence, this report, and any references to the content thereof, should be redacted in their entirety." *Id.*

Information from the Dutch Prosecutor's Report falls into a category of "records used to gratify spite or promote scandal and files that might serve as reservoirs of libelous statements for press consumption." *In re Pishevar*, No. 119-MC-00503, 2020 WL 1862586, at *7 (S.D.N.Y. Apr. 14, 2020) (finding sensitive nature of documents containing false details from an arrest and investigation that later was dropped outweighed presumption of public access) (quoting *Amodeo I*, 44 F.3d at 146) (internal quotations omitted).  Given the Upper Brook Companies' ongoing campaign against Palladyne and its principals, the purpose these documents from the Dutch Prosecutor's Office serve is not to support a Section 1782 application, but to further promote scandal and press interest in contradiction to Palladyne's principals' privacy interests. *See, e.g., U.S. v. Basciano*, No. 03-CR-00929, 2008 WL 123952, at *1 (E.D.N.Y. Jan. 11, 2008) (finding presumption of public access usually accorded to judicial documents diminished by the

countervailing law enforcement privileges and innocent-third-party privacy interests of individuals that are implicated by the documents).

The Dutch Prosecutor's Report materials also include names and other information pertaining to family members of Palladyne's head who remain in Libya, where the rule of law is not strong at the moment.[1]  In addition to the other reasons for protecting the information in question, redaction and sealing are warranted to avoid subjecting such persons to unnecessary risk.

## III.   MATERIALS FROM THE NON-PUBLIC SUMMONSES ISSUED IN THE DUTCH PROCEEDINGS SHOULD BE FILED UNDER SEAL AND INFORMATION FROM THE SUMMONSES REDACTED FROM DECLARATIONS AND MEMORANDA OF LAW.

Exhibits 5 and 10 to Mr. Miller's Declaration are the "summonses" Applicants have filed in the Dutch court to initiate their actions against Palladyne.  (ECF 21, Adler Decl. Exs. 4 & 8 (ECF 4-5 & 4-10).)  In Dutch procedure, a summons is the equivalent of a complaint in US litigation, i.e., the document that sets forth the factual and legal basis alleged in support of the claim.  But, unlike a complaint in U.S. litigation, Dutch summonses are not publicly available and are considered confidential.  (ECF 20, de Keijzer Decl. ¶ 4.)  Additionally, these summonses contain considerable information taken directly from the materials obtained from the Dutch Prosecutor's Office, as set forth above.  While the existence and nature of the Dutch proceedings is plainly relevant to this Section 1782 application, ample evidence of such matters is provided by the non-confidential decisions of the Dutch courts that have also been filed by the Upper Brook Companies.  (ECF 4-9 & 4-11, Miller Decl. Exs. 9 & 11.)  Accordingly, Palladyne

---

1.   *See, e.g., 2021 Country Reports on Human Rights Practices: Libya*, U.S. Dep't of State https://www.state.gov/reports/2021-country-reports-on-human-rightspractices/libya (last visited July 12, 2022).

103239673_7

respectfully requests that the two Dutch summonses, Exhibits 5 and 10 to Mr. Miller's

Declaration (ECF 21, Adler Decl. Exs. 4 & 8 (ECF 4-5 & 4-10)), be filed under seal.

Similarly, Exhibit A to Mr. Rutten's Second Declaration (ECF 29-1) should be filed

under seal as in Dutch civil litigation, documents pertaining to a counterclaim, such as a

statement of defense, are not public documents.  (*See* ECF 20, de Keijzer Decl. ¶ 4.)  Therefore,

Palladyne respectfully requests that the translation of the excerpt of Palladyne's Statement of

Defense, Exhibit A to Mr. Koen's Second Declaration (ECF 29-1), be filed under seal.

### A.      Although They Can Perhaps be Considered "Judicial Documents," Any Presumption of Access to the Dutch Summonses is Low.

Palladyne does not dispute that the pendency of the Dutch proceedings and the claims

asserted in those proceedings are relevant to the Court's consideration of whether to grant U.S.

discovery under Section 1782 for use in those proceedings.  However, the Upper Brook

Companies have also included in their submissions actual decisions by the Dutch court (ECF 4-9

& 4-11, Miller Decl. Exs 9 & 11), which are not considered confidential under Dutch law (ECF

20, de Keijzer Decl. ¶ 4).  These decisions provide a complete and equally sound basis for the

Court to inform itself of the pendency and nature of the Dutch proceedings.  The summonses are

therefore superfluous, and any presumption of access to them is at the low end of the spectrum.

### B.      Countervailing Factors Favor Sealing and Redaction of the Dutch Summonses.

Any presumption of public access to the Dutch summonses is outweighed by

countervailing considerations, i.e. (1) the fact that such summonses are not public and are

considered confidential under Dutch law (ECF 20, de Keijzer Decl. ¶ 4), and (2) Palladyne's

legitimate interest in being protected from public disclosure of unproven allegations against it,

including information derived from the Dutch Prosecutor's Report discussed above. These

countervailing considerations warrant filing under seal.

## IV. MATERIALS FROM THE CORRESPONDENCE WITH AND DETERMINATIONS BY THE CAYMAN ISLANDS REGULATORY AUTHORITIES SHOULD BE FILED UNDER SEAL AND RELATED INFORMATION REDACTED FROM DECLARATIONS AND MEMORANDA OF LAW.

Exhibits 1 and 2 to Mr. Kennedy's Declaration consist of correspondence with Cayman

Islands regulators concerning Palladyne's sanctions licenses, including a notice from the

Governor of the Cayman Islands pertaining to Palladyne's status. (ECF 6-1 & 6-2, Kennedy

Decl. Exs. 1 & 2.) These materials have no relevance whatsoever to the Upper Brook

Companies' Section 1782 application. The Cayman Islands follow strict confidentiality laws.

Palladyne therefore requests that Exhibits A and B to Mr. Kennedy's Declaration (ECF 21, Adler

Decl. Exs. 13 & 14 (ECF 6-1 & 6-2)) be filed under seal, and that Mr. Kennedy's Declaration be

redacted to remove quotations from and references to the content of these materials (ECF 21,

Adler Decl. Ex. 12 (ECF 6)).

### A. The Correspondence with and Determinations by the Cayman Islands Regulatory Authorities are Not "Judicial Documents."

It is not at all clear why the Upper Brook Companies have found it necessary to include

correspondence with the Cayman Island regulators with their application. The only reference to

these materials in the memorandum of law supporting their application is buried in a footnote.

(ECF 3, MOL at 4-5 n.11.) The correspondence with and the determinations by the Cayman

Island Regulatory Authorities are simply not "relevant to the performance of the judicial function

[or] useful in the judicial process" here. *Lugosch*, 435 F.3d at 119.

Information regarding Palladyne's status under Cayman law appears to have no discernable relationship to the resolution of the issues before the Court and therefore, plays at best "a negligible role in the performance of Article III duties." *Amodeo II*, 71 F.3d at 1050.  It also cannot be said that the correspondence with and determinations by the Cayman Islands regulators "are necessary to understand the merits" of the proceeding and thus subject to a public right of access. *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 169 (S.D.N.Y. 2018) (quoting *Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 164 (2d Cir. 2013)).  Rather, the materials are "unrelated to determining the parties' substantive rights." *Alcon Vision, LLC v. Lens.com*, No. 18-CV-0407, 2020 WL 3791865, at *11 (E.D.N.Y. July 7, 2020).  These materials therefore should not be considered "judicial documents" and no presumption of public access should attach to them.

## V.  THE INVESTMENT MANAGEMENT AGREEMENTS BETWEEN PALLADYNE AND THE UPPER BROOK COMPANIES SHOULD BE FILED UNDER SEAL.

Attached as Exhibits 6, 7 and 8 to Mr. Miller's Declaration are the investment management agreements signed in 2006 and 2007 between the Upper Brook Companies and Palladyne.  (ECF 4-6, 4-7, 4-8, Miller Decl. Exs. 6-8.)  The Upper Brook Companies refer to these agreements only as background information regarding the creation of their relationship with Palladyne.  Paragraph 9 of each of these agreements imposes a two-way duty of confidentiality between the parties.  In addition, the terms upon which Palladyne provides investment management services to its clients, and the fees it charges for those services are confidential, competitively sensitive trade secrets.  Palladyne therefore requests that Exhibits 6-8 to Mr. Miller's Declaration (ECF 21, Adler Decl. Exs. 5-7 (ECF 4-6, 4-7, 4-8)) be filed under seal.

### A.      The Investment Management Agreements are Not "Judicial Documents."

The investment management agreements are simply not "relevant to the performance of the judicial function [or] useful in the judicial process" here.  *Lugosch*, 435 F.3d at 119.  The Upper Brook Companies refer to these agreements only in passing, with reference to the inception of the Libyan Investment Authority's relationship with Palladyne, and the Upper Brook Companies' purported termination of the agreements.  (ECF 3, MOL at 3-5, 8.)  They do not pertain to, and are not cited as supporting, any element relevant to the determination of their Section 1782 application.  Accordingly, they are not "judicial documents" subject to any presumption of public access.

### B.      Any Presumption of Access to the Investment Management Agreements is Low.

In the alternative, any presumption of access to the investment management agreements would be at the lowest end of the scale.  The terms of the agreements are not referred to by the Upper Brook Companies at all and have no bearing on the merits of the Upper Brook Companies' Section 1782 application.  *Cf. Alcon Vision, LLC*, 2020 WL 3791865, at *11 (concluding exhibits discussing proprietary information could remain under seal because they were "unrelated to determining the parties' substantive rights").

### C.      Countervailing Factors Favor Sealing and Redaction of the Investment Management Agreements.

The form of investment management agreement Palladyne uses, and the terms upon which it agrees to provide its services to clients, are competitively-sensitive, proprietary, non-public information.  (ECF 20, de Keijzer Decl. ¶ 5.)  Palladyne has sought to protect the confidentiality of such information by including an obligation of confidentiality in the terms of

the agreements themselves.  (ECF 4-6, 4-7, 4-8, Miller Decl. Exs. 6-8 at ¶ 9.)  By filing the

agreements here, the Upper Brook Companies are breaching a contractual duty of confidentiality.

The need to protect sensitive commercial information from disclosure to competitors is

recognized as a privacy interest that can outweigh the presumption of public access.  *See City of*

*Providence v. BATS Glob. Mkts., Inc.*, No. 14-CV-2811, 2022 WL 539438, at *1 (S.D.N.Y. Feb.

23, 2022) (collecting cases).  The terms upon which Palladyne provides investment management

services to its clients, and the fees it charges for those services, are confidential, competitively

sensitive trade secrets.  Palladyne's interest in maintaining the confidentiality of these documents

outweighs any low presumption of public access that might attach to these materials.

## VI.   INFORMATION THAT CAN BE USED TO IDENTIFY PALLADYNE'S BANK ACCOUNTS SHOULD BE REDACTED FROM THE PUBLIC CASE FILINGS.

There is perhaps no dispute that information identifying Palladyne's bank accounts

should be redacted from the public filings in this matter.  Pursuant to the April 11, 2022 Order

granting the application for discovery, this Court ordered Applicants to file on the public court

docket versions of their submissions from which bank account numbers and other unique bank

account identifiers have been redacted.  (ECF 13, April 11, 2022 Order, at 2.)  This is in

accordance with Fed. R. Civ. P. 5.4(a).  In addition to the account number, Palladyne respectfully

requests that the name of its Dutch bank and specific details of the manner in which Palladyne

conducts its banking activities should be redacted from the Upper Brook Companies' filings.

Palladyne has a strong privacy interest in protecting the name of its banking institution,

which is non-public information that has no bearing on any matters the Court is called upon to

decide here.  The courts have recognized that an account holder's privacy interest in bank

account information is not limited to the account number alone, but can include the name of the

bank and other details that would reveal information about the overall banking relationship.  *See,*

16

*e.g., Sec. & Exch. Comm'n v. Telegram Grp. Inc.*, No. 19-CV-9439 (PKC), 2020 WL 3264264, at *5 (S.D.N.Y. June 17, 2020) (sealing exhibit containing banking records in its entirety because "[a] party's interest in the confidentiality of its general financial records is a countervailing factor that can outweigh the public's right of access," noting that "[b]anking records are a highly sensitive type of financial record and so are entitled to additional consideration"); *Strauss v. Credit Lyonnais, S.A.*, No. 06-CV-702, 2011 WL 4736359, at *4-5 (E.D.N.Y. Oct. 6, 2011) (sealing bank records in entirety where records themselves "plainly contain information 'traditionally considered private rather than public'"); *Prescient Acquisition Grp., Inc. v. MJ Pub. Tr.*, 487 F. Supp. 2d 374, 376–77 (S.D.N.Y. 2007) (sealing copies of checks that would reveal "specific details of the manner in which [the individual] conduct[ed] his personal banking activities, i.e. the identity of the bank, the authorized signature [], the address of the account and the form and appearance of the check").

Therefore, any information identifying Palladyne's bank accounts, banking institution and specific details of the manner in which Palladyne conducts its banking activities should be redacted. This includes the references to the name of the Dutch banking institution and account details. Such references should be redacted from the Upper Brook Companies' Memorandum of Law in Opposition to Palladyne's Motion to Vacate the April 11, 2022 Order and Quash the J.P. Morgan Subpoena (ECF 28), the Second Declaration of Mr. Rutten (ECF 29), and the Second Declaration of Mr. Abbey (ECF 30). Exhibit B to the Second Declaration of Mr. Rutten should be sealed in its entirety given that the majority of the document itself references to or discusses the same and it discusses private information concerning the banking relationship (ECF 29-2).

103239673_7

## CONCLUSION

For the foregoing reasons, Palladyne respectfully requests that the Court grant its motion and enter an Order sealing or redacting the designated categories of information.

Dated: New York, New York
   July 14, 2022

HUGHES HUBBARD & REED LLP

By: _____
   Derek J.T. Adler

One Battery Park Plaza
New York, New York 10004
(212) 837-6000
derek.adler@hugheshubbard.com

*Attorneys for Applicants Palladyne*
*International Asset Management B.V. and its*
*affiliates*

18