UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

IN THE MATTER OF THE *EX PARTE*
APPLICATION OF THE UPPER BROOK
COMPANIES FOR AN ORDER DIRECTING
DISCOVERY IN AID OF A FOREIGN
PROCEEDING PURSUANT TO 28 U.S.C. § 1782

-----------------------------------------------------------x

22-mc-97 (PKC)

ORDER ON SEALING

CASTEL, U.S.D.J.


On April 11, 2022, this Court granted an <u>ex parte</u> application brought by the

Upper Brook Companies to take discovery in aid of a foreign proceeding (the "April 11 Order").

28 U.S.C. § 1782.  Palladyne International Asset Management ("PIAM") filed a motion to vacate

the April 11 Order and quash the resulting subpoena.  (Doc 24.)  The Court denied the motion to

vacate on December 23, 2022, but narrowed the temporal scope of the subpoena.  (Doc 41.)

PIAM has also filed a motion to redact or seal certain documents submitted in

connection with the Upper Brook Companies' application (the "Motion to Seal").  (Doc 33.)

The Upper Brook Companies state that they "do not take a position on the relief that PIAM

seeks," but assert that the Motion to Seal is "groundless."  (Doc 34.)  For the reasons that will be

explained, the Court will grant the Motion to Seal in part.


LEGAL STANDARD

There is a common law right of public access to judicial documents that is "firmly

rooted in our nation's history."  <u>Lugosch v. Pyramid Co. of Onondaga</u>, 435 F.3d 110, 119-20 (2d

Cir. 2006).  "The presumption of access is based on the need for federal courts . . . to have a

measure of accountability and for the public to have confidence in the administration of justice." Id. at 119 (quoting United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995) ("Amodeo II").

The Second Circuit has established a three-part framework for determining whether the common law right attaches. Id. at 119-20. First, the court must determine whether the documents at issue qualify as "judicial documents." Id. at 119. If the documents are judicial documents, to which a common law presumption of public access attaches, the court must determine the weight of that presumption. Id. Finally, the court must balance the weight of the presumption against any "competing considerations." Id. at 120.

Established "countervailing factors" include "the danger of impairing law enforcement or judicial efficiency" and "the privacy interests of those resisting disclosure" and of third parties. See id.; Amodeo II, 71 F.3d at 1050. In addition, "[f]inancial records of a wholly-owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public." Amodeo II, 71 F.3d at 1051. Courts should also consider "[t]he nature and degree of injury" that may result from disclosure, the "reliability of the information," and "whether the nature of the materials is such that there is a fair opportunity for the subject to respond to any accusations contained therein." Id. If such factors outweigh the value to the public of accessing the document at issue, then that document should be sealed.

In addition to the common law right of access, there is also a qualified First Amendment right to access judicial documents. Lugosch, 435 F.3d at 120 (quoting Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 92 (2d Cir. 2004)). Under the "experience and logic" test, the court must consider whether the documents "have historically been open to the press and general public" and whether "public access plays a significant positive role in the functioning of

the particular process in question."  Id. (quoting Hartford Courant Co., 380 F.3d at 92).  If a First Amendment right of access applies, documents may only be sealed "if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest."  Id. at 120, 124 (quoting In re New York Times Co., 828 F.2d 110, 116 (2d Cir. 1987)).

"The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action . . . ."  DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 826 (2d Cir. 1997) (citing Amodeo II, 71 F.3d at 1047).  The party must show, "with more than generalized concerns, that sealing is supported by countervailing interests – that is, that some identifiable harm is likely to occur in the absence of sealing."  Fischman v. Mitsubishi Chem. Holdings Am., Inc., 18-Civ-8188, 2019 WL 3034866, at *3 (S.D.N.Y. July 11, 2019) (quotations omitted) (citing Bernsten v. O'Reilly, 307 F. Supp. 3d 161, 169 (S.D.N.Y. 2018); In re Document Techs. Litig., 282 F. Supp. 3d 743, 747 (S.D.N.Y. 2017)).


DISCUSSION

A.  Requested Redactions and Sealing.

PIAM seek to seal or redact six categories of information, as described below.  In support of its motion, PIAM submitted declarations by Lily Yeo, (Doc 19), Jaap de Keijzer, (Doc 20), and Derek Adler, (Doc 18; Doc 21; Doc 35; Doc 36).  The Adler declarations contain PIAM's proposed redactions, which the Court has reviewed.  The Court assumes familiarity with the underlying facts of this case, which are set forth in its December 23, 2022 Order.

1.  <u>PIAM's Financial Information in the First Abbey Declaration</u>

PIAM seeks to redact financial information obtained by Ernst & Young ("EY")

during its forensic audit of PIAM.  It takes issue with the "detailed accounting of movements of

certain funds through" PIAM's bank accounts.  (Doc 34 at 10.)  Specifically, PIAM seeks to

redact the total amount of management fees that EY determined PIAM invoiced the Upper Brook

Companies between 2007 and December 2019, the amount actually transferred from the Upper

Brook Companies to PIAM, a table reflecting the flow of management fees for each fund,

information about payments to third parties, and supporting financial documentation filed as

Appendix B to the First Abbey Declaration.  (<u>See</u> Doc 21, Exs. 2, 9, 10 (proposing redactions

and sealing).)  PIAM proposes redaction of portions of the First Abbey Declaration,[1] (Doc 5),

and relevant references in the Upper Brook Companies' memorandum of law in support of their

application, (Doc 3), as well as sealing of Appendix B to the First Abbey Declaration, (Doc 5,

App. B).

2.  <u>Dutch Prosecutor's Report</u>

PIAM also seeks sealing of a report prepared by the Dutch Public Prosecutor's

Office "based on information collected during a criminal investigation" of PIAM commenced in

2013 (the "Dutch Prosecutor's Report" or "Report").  (Doc 34 at 13; Doc 21, Exs. 2, 9, 11

(proposing redactions and sealing).)  It requests sealing of the Dutch Prosecutor's Report

(Appendix C to the First Abbey Declaration), (Doc 5, App. C), and a letter from the Dutch

Public Prosecutor's Office (Exhibit C to the Second Rutten Declaration), (Doc 29, Ex. C).  It also

requests redactions of related references in the First Abbey Declaration, (Doc 5), and the Upper

Brook Companies' memorandum of law in support of their application, (Doc 3).

---

[1] Richard Abbey is an EY partner, and his first declaration describes EY's forensic investigation into PIAM's
management of the investments in the Upper Brook Companies.  (Doc 5.)

### 3.   Summonses and Counterclaims in the Foreign Proceedings

Additionally, PIAM requests that the summonses filed by the Upper Brook Companies in the Netherlands be filed under seal.  (Doc 21, Ex. 4, 8 (proposing redactions); <u>see also</u> Doc 4, Exs. 5, 10 (annexing the summonses).)  PIAM also seeks sealing of Exhibit A to the Second Rutten Declaration, (Doc 29, Ex. A), which is a translation of an excerpt of PIAM's Statement of Defense.  (Doc 36, Ex. 18 (proposing redactions).)

### 4.   Correspondence with and Determinations by Cayman Islands Regulators

Next, PIAM seeks to redact references to correspondence with and determinations by regulatory authorities in the Cayman Islands.  (Doc 34 at 18; Doc 21, Exs. 12-14 (proposing redactions).)  Specifically, it requests Exhibits A and B to the Kennedy Declaration be filed under seal, (Doc 6, Exs. A, B), and the Kennedy Declaration be redacted to remove related references, (Doc 6).

### 5.   IMAs

PIAM requests that the investment management agreements ("IMAs") between the Upper Brook Companies and PIAM be filed under seal.  (Doc 34 at 19; Doc 21, Exs. 5-7 (proposing redactions); <u>see also</u> Doc 4, Exs. 6-8 (annexing the IMAs).)

### 6.   Information Identifying PIAM's Bank Accounts

The final category of information PIAM seeks to redact or seal is information that can be used to identify its bank accounts, including the name of is Dutch bank and the "specific details of the manner in which [it] conducts its banking activities."  (Doc 34 at 21-22; Doc 36, Ex. 16-17, 19, 21 (proposing redactions).)  PIAM seeks redactions to the Upper Brook Companies' memorandum of law in opposition to PIAM's motion to vacate, (Doc 28), the

Second Rutten Declaration (Doc 29), and the Second Abbey Declaration (Doc 30).  It requests

Exhibit B to the Second Rutten Declaration, (Doc 29, Ex. B), be filed under seal.


B.  PIAM's Delay in Filing Its Motion to Seal.

Certain documents at issue are currently sealed, while others are available on the

public docket.  The Upper Brook Companies filed their application for discovery pursuant to

section 1782 and their supporting memorandum of law and declarations ex parte.  (Doc 1; Doc 3-

7.)  The Court's April 11 Order granting the application directed the Upper Brook Companies to,

within five days, (1) serve a copy of the April 11 Order and all submissions in support of the

application on PIAM, and (2) file redacted versions of their submissions, redacting all bank

account numbers and any other unique identifiers for any banking account, as well as a proposed

order unsealing the docket.  (Doc 13 at 2.)  On April 15, 2022, PIAM filed a letter with this

Court stating that it received copies of the Upper Brook Companies' unredacted submissions

overnight and that it believed certain information should be redacted or filed under seal.  (Doc

15.)  The Court granted PIAM's request for additional time to review the materials and ordered

the Upper Brook Companies not to file their submissions on the public docket until PIAM had an

opportunity to be heard on the sealing issue.  (Doc 16.)

Accordingly, the following documents submitted in connection with the

application are not currently available on the public docket: the Upper Brook Companies'

application, (Doc 1), the memorandum of law in support of their application, (Doc 3), the Miller

Declaration containing the summonses and IMAs, (Doc 4), the First Abbey Declaration

containing the alleged non-public financial information and the Dutch Prosecutor's Report, (Doc

5), the First Kennedy Declaration containing correspondence with and determinations by Cayman Islands regulatory authorities, (Doc 6), and the First Rutten Declaration, (Doc 7).

However, the documents submitted in connection with the Upper Brook Companies' opposition to PIAM's motion to vacate were filed on the public docket in May 2022 and remain publicly available.  Specifically, the following documents at issue are currently public: the Upper Brook Companies' memorandum of law in opposition to PIAM's motion to vacate, (Doc 28), the Second Rutten Declaration containing the translation of PIAM's Statement of Defense and the letter from the Dutch Public Prosecutor's Office, (Doc 29), and the Second Abbey Declaration, (Doc 30).

These three documents were filed by the Upper Brook Companies on May 31, 2022.  PIAM filed its reply in support of its motion to vacate on June 14, 2022, but did not file its Motion to Seal until July 14, 2022.  PIAM has not alleged that any harm resulted from the public availability of these documents during the approximately one and a half months between when they were filed and when PIAM filed its Motion to Seal.[2]  PIAM only mentions the timing of its motion in order to explain that it was filing its Motion to Seal "[n]ow that [its] Motion to Vacate . . . is fully briefed."  (Doc 34 at 6.)  Even if PIAM had alleged that disclosure of these documents would lead to some concrete harm, its "failure to act promptly" undermines the notion that sealing is necessary to avoid harm.  See Fischman, 2019 WL 3034866, at *3. PIAM's delay in filing its Motion to Seal therefore weighs heavily against its request to redact or seal these three documents.

---

[2] PIAM also has not presented any evidence of harm arising during the six months that have elapsed since it filed the Motion to Seal.

C.  The Documents at Issue Are Judicial Documents.

        Merely filing a document with a court does not render the item a "judicial

document."  United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I").  Rather,

the document "must be relevant to the performance of the judicial function and useful in the

judicial process."  Id.  A document is "'relevant to the performance of the judicial function' if it

would reasonably have the tendency to influence a district court's ruling on a motion or in the

exercise of its supervisory powers . . . ."  Brown v. Maxwell, 929 F.3d 41, 49 (2d Cir. 2019)

(citing Amodeo I, 44 F.3d at 145-46).

        Although this Court has already issued its decision on the motion to vacate,

whether the Court actually relied on any of the challenged documents is "irrelevant to the

determination" of whether they qualify as judicial documents.  See Brown, 929 F.3d at 50

("Insofar as the District Court held that these materials are not judicial documents because it did

not rely on them in adjudicating a motion, this was legal error. As explained above, the proper

inquiry is whether the documents are relevant to the performance of the judicial function, not

whether they were relied upon.").

        The Court concludes that all six categories of information are "judicial

documents" because they have the tendency to influence the Court's ruling on the section 1782

application and corresponding motion to vacate.  See Brown, 929 F.3d at 50; In re Gushlak, 11-

mc-0218, 2012 WL 3683514, at *3 (E.D.N.Y. July 27, 2012), report and recommendation

adopted, 11-mc-218, 2012 WL 3779229 (E.D.N.Y. Aug. 30, 2012) (concluding that documents

filed in conjunction with a section 1782 application were "submitted to the Court for purposes of

seeking or opposing an adjudication" and were "relevant to the performance of the judicial

function and useful in the judicial process").  In particular, each category speaks to whether or

not the requested discovery is "for use" in a foreign proceeding and whether or not the application is a fishing expedition.  Accordingly, the documents are entitled to a presumption of access.

D.  The Documents Are Entitled to a Presumption of Access.

The weight accorded the presumption of public access is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.  Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance."  Amodeo II, 71 F.3d at 1049. Documents submitted in connection with dispositive motions, such as motions for summary judgment, are entitled to a strong presumption of access.  Lugosch, 435 F.3d at 121.  Meanwhile, judicial documents that "play only a negligible role in the performance of Article III duties" carry a low presumption.  Amodeo II, 71 F.3d at 1050.  Those that "play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach, and stand[] on a different footing than . . . a motion filed by a party seeking action by a court, or . . . any other document which is presented to the court to invoke its powers or affect its decisions."  Id. (citations omitted).

The documents at issue here fall somewhere in the middle of the continuum.  On the one hand, the information affects the adjudication of the section 1782 application and motion to vacate insofar as it reflects the basis for seeking discovery in the United States pursuant to section 1782 and the purposes the requested discovery would serve in the foreign proceedings. On the other hand, detailed financial information about PIAM, the name of its Dutch bank, and

copies of the Dutch Prosecutor's Report, filings in the Dutch proceedings, communications with Cayman Islands regulators, and the IMAs in their entirety are not critical to the Court's ability to rule on the application and motion to vacate.  See Turner Network Sales, Inc. v. DISH Network L.L.C., 17-Civ-7599, 2019 WL 147372, at *1 (S.D.N.Y. Jan. 9, 2019) (finding a strong presumption of public access where documents were submitted in connection with a motion for summary judgment and were "critical to the Court's adjudication of that motion").  Moreover, section 1782 applications are generally considered non-dispositive.  See, e.g., In re Hulley Enterprises Ltd., 400 F. Supp. 3d 62, 71-72 (S.D.N.Y. 2019); In re Vale S.A., 20-mc-199, 2020 WL 4048669, at *3 n.3 (S.D.N.Y. July 20, 2020); In re Iraq Telecom Ltd., 18-mc-458, 2020 WL 1047036, at *1 (S.D.N.Y. Mar. 4, 2020).  Therefore, the Court concludes the documents are "subject to a lesser – but still substantial – presumption of public access."  See Brown, 929 F.3d at 53; United States v. Correia, 19-Cr-725-3, 2020 WL 6683097, at *1 (S.D.N.Y. Nov. 12, 2020) (finding a "moderate" presumption where documents were related to authority "ancillary to the court's core role in adjudicating a case" and "closer in nature to filings associated with discovery . . . than to dispositive motions").

E.  Countervailing Factors.

PIAM argues that regardless of any presumption that attaches to the documents at issue, its proposed redactions and sealing are warranted given countervailing confidentiality and privacy interests.  The Court will address PIAM's asserted countervailing interests as they pertain to each category of information in turn.

1.  <u>Financial Information in the First Abbey Declaration</u>

PIAM argues that it has a "strong privacy interest" in maintaining the

confidentiality of the "non-public financial information" gathered by EY as part of its forensic

review.  (Doc 34 at 12-13; Doc 39 at 7-8.)  PIAM also emphasizes the fact that it voluntarily

cooperated with EY's investigation "based on the express understanding that the materials and

information it provided to EY would be kept confidential."  (<u>See</u> Doc 34 at 12 (citing <u>Travelers</u>

<u>Indem. Co. v. Excalibur Reinsurance Corp.</u>, 11-Civ-1209, 2013 WL 4012772, at *6 (D. Conn.

Aug. 5, 2013)); <u>see also</u> Doc 19 ¶ 2, Ex. A at 3.)  However, this fact does not weigh heavily

against public disclosure of the materials because Mr. Abbey expressly stated that the EY report

was based on materials obtained from third parties, not from PIAM.  (<u>See</u> Doc 37 at 5, 12-13;

Doc 30 ¶ 20.)

A presumption of access may be outweighed by a party's interest in "protecting

confidential business information" from disclosure that would subject it to "financial harm" or a

"significant competitive advantage."  <u>Standard Inv. Chartered, Inc. v. Fin. Indus. Regul. Auth.,</u>

<u>Ind.</u>, 347 F. App'x 615, 617 (2d Cir. 2009) (concluding district court did not abuse its discretion

in permitting redactions on such grounds); <u>Amodeo II</u>, 71 F.3d at 1051 ("Commercial

competitors seeking an advantage over rivals need not be indulged in the name of monitoring the

courts . . . .").

For example, courts in this Circuit have sealed "highly confidential sales

information, including pricing information," <u>Skyline Steel, LLC v. PilePro, LLC</u>, 101 F. Supp.

3d 394, 412-13 (S.D.N.Y. 2015), information "revealing confidential negotiations" with a

customer, <u>id.</u>, "billing rates and project pricing, as well as details of specific projects completed

for several clients," <u>Hesse v. SunGard Sys. Int'l</u>, 12-Civ-1990, 2013 WL 174403, at *2

(S.D.N.Y. Jan. 14, 2013), "marketing strategies, product development, costs and budgeting," GoSMiLE, Inc. v. Dr. Johnathan Levine, D.M.D. P.C., 769 F. Supp. 2d 630, 649-50 (S.D.N.Y. 2011), sources and amount of revenue and "information regarding settlement agreements with third parties, which include confidentiality obligations to those third parties," Kewazinga Corp. v. Microsoft Corp., 18-Civ-4500, 2021 WL 1222122, at *6 (S.D.N.Y. Mar. 31, 2021), "internal corporate documents that govern investment strategies, information regarding proprietary modeling assumptions," and "customer names, account numbers, and pricing information," Dodona I, LLC v. Goldman, Sachs & Co., 119 F. Supp. 3d 152, 156 (S.D.N.Y. 2015)

By contrast, courts have declined to seal information where the movant failed to make any "evidentiary showing that the information that it seeks to maintain under seal is a trade secret," Alcon Vision, LLC v. Lens.com, 18-Civ-0407, 2020 WL 3791865, at *8 (E.D.N.Y. July 7, 2020), and where the information was outdated and "stale" and the movant failed to show how disclosure "would result in any competitive harm," see id.; see also Valassis Commc'ns, Inc. v. News Corp., 17-Civ-7378, 2020 WL 2190708, at *3 (S.D.N.Y. May 5, 2020).

PIAM has not alleged any competitive harm that would flow from disclosure of the financial information in the First Abbey Declaration.  It merely states that the information is "non-public" and that it therefore has a "strong privacy interest."  (Doc 34 at 13; Doc 39 at 7-8.)  The Court declines to speculate about the harm that could result if PIAM's competitors learned of the fees it charged and amounts it shared with third parties.  It is PIAM's burden to demonstrate that the information warrants sealing, and it has failed to do so.  See DiRussa, 121 F.3d at 826 (citing Amodeo II, 71 F.3d at 1047).  Moreover, the underlying invoices and agreements date back several years, and PIAM has not attempted to show that the information is not "stale" and why disclosure would still cause harm.  See Alcon Vision, 2020 WL 3791865, at

*8; Valassis Commc'ns, 2020 WL 2190708, at *3.  Such conclusory assertions are insufficient to justify sealing.  Accordingly, the Court rejects PIAM's proposed redactions and sealing with respect to this category of information, except that the Upper Brook Companies shall redact all account numbers and other identifiers in Appendix B to the First Abbey Declaration.

2.   Dutch Prosecutor's Report

PIAM claims that the Dutch Prosecutor's Report should be filed under sealed because it is "confidential under Dutch law."  (Doc 34 at 13; Doc 20 ¶ 2).  In support of this assertion, PIAM submitted a declaration by Jaap de Keijzer, an attorney licensed in the Netherlands.  (Doc 20 ¶ 1.)  de Keijzer states, "Under Dutch law, materials gathered and generated in the course of a criminal investigation of this type are confidential."  (Doc 20 ¶ 2.) de Keijzer cites a provision of the Dutch Code of Criminal Procedure that provides that only a victim or injured party in a criminal investigation may request to receive information from the public prosecutor.  (Id.)  However, even taking this explanation at face value, that provision does not expressly prohibit disclosure of the information.

Meanwhile, the Upper Brook Companies filed a declaration by Koen Rutten, an attorney licensed in the Netherlands, to support their argument that the Dutch Prosecutor's Report is not confidential.[3]  (Doc 29.)  Rutten correctly notes that PIAM has offered "no legal opinion" to support its claims, and he explains that "the Dutch Prosecutor shared the Dutch Prosecutor Report in May 2014 with the explicit agreement that it could be used in connection

---

[3] The Upper Brook Companies also assert that the Dutch Prosecutor's Report is not confidential because the information has already been disclosed in public decisions by Dutch courts.  (Doc 37 at 6-7, 11.)  However, while those decisions mention the criminal investigation, they do not disclose the report in its entirety.  Although one opinion does quote directly from the report, suggesting the content may not be confidential, the Court remains unpersuaded that the report itself should be publicly disclosed; indeed, the Prosecutor expressly requested that it not be shared with certain individuals.  (See Doc 4, Ex. 11 ¶ 3.8.)

with 'the preparation or substantiation of a civil claim for damages or proceedings, which includes an appearance as an injured party.'" (Doc 29 ¶ 27, Ex. C.)

PIAM states, however, that this authorization was given to the Libyan Investment Authority, not to the Upper Brook Companies, and that the Upper Brook Companies may not act for the Libyan Investment Authority. (Doc 39 at 8.) The Upper Brook Companies have failed to satisfactorily demonstrate that they have such authority to act for the Libyan Investment Authority. PIAM also notes that Prosecutor requested confirmation in writing that the information "will not be shared in any way" with certain individuals. (Doc 29, Ex. C.) Allowing the Report and related references to be publicly available on the Court's electronic case filing system, it argues, would allow those individuals to access the information. (Doc 34 at 13-14.)

There is no definitive legal authority supporting the confidentiality of the Report and no concrete authorization for the Upper Brook Companies to share the Report publicly. Given the Dutch Prosecutor's express request that the Report not be shared with certain individuals, the Court concludes that PIAM has demonstrated a countervailing confidentiality interest sufficient to override the presumption of public access.[4] The Dutch Prosecutor's Report, (Doc 5, App. C), shall remain under seal, and the relevant references in the First Abbey Declaration, (Doc 5 ¶¶ 24-31 and footnotes 7 and 8), and on page 9 of the Upper Brook Companies' memorandum of law in support of their application, (see Doc 21 at 24), shall be redacted.

---

[4] The other countervailing factors PIAM asserts with respect to the Dutch Prosecutor's Report are unpersuasive. PIAM argues that the Report is being used by the Upper Brook Companies to "gratify spite or promote scandal" and press interest. (Doc 34 at 15.) As the Upper Brook Companies note, they filed their section 1782 application under seal. Additionally, PIAM has failed to show that sealing is necessary to protect "family members of [PIAM's] lead who remain in Libya, where the rule of law is not strong at the moment." (Doc 34 at 16.) PIAM asserts in conclusory and speculative terms that "redaction and sealing are warranted to avoid subjecting such persons to unnecessary risk," (id.), but provides no evidence that those individuals are in any danger. Its citation to a United States Department of State report on human rights practices in Libya does not make its assertions any less speculative. (See Doc 34 at 16 n.1.)

The remainder of PIAM's proposed redactions with respect to this category are not narrowly tailored and will be rejected.  PIAM seeks to redact the following sentence in footnote 11 of the Upper Brook Companies' memorandum of law in support of their application: "The misconduct of the PIAM Entities and its principals have also triggered law enforcement investigations into allegations that the PIAM Entities and their principals a) mismanaged the funds of the Upper Brook Companies by, inter alia, siphoning funds out of the Upper Book Companies for the personal benefit of a PIAM executive, b) overcharged the Upper Brook Companies for their purported investment management services, and c) potentially entering into the investment management agreements with the Upper Brook Companies using forged documentation . . . ."  (Doc 21 at 19-20.)  This sentence describes the allegations at the center of the law enforcement investigations into PIAM and its principals, but it neither quotes nor references the Dutch Prosecutor's Report.  While PIAM has sufficiently demonstrated the Report itself should be filed under seal, it has not demonstrated that the Upper Brook Companies' own summary of the allegations are confidential.  The fact that PIAM has not proposed redactions to substantially similar information later in the memorandum is further evidence that its redaction in footnote 11 is not narrowly tailored.  (Doc 21 at 25 (declining to redact quote from public Dutch court decision describing criminal investigations based on "suspicions of money laundering, fraud and forgery of documents").)  In addition, the redaction to page 9 of the same memorandum of law, (see Doc 21 at 25-26), describes and quotes a Dutch court decision, which PIAM has expressly conceded is public, (see Doc 34 at 16-17; Doc 39 at 7, 9).

The letter from the Dutch Prosecutor's Office, (Doc 29, Ex. C), will remain unsealed.  As previously noted, this document was available on the public docket for one and a half months before PIAM filed its Motion to Seal, and it has remained publicly available.  PIAM

has not presented any evidence of harm that occurred during that period or thereafter, and as such, there is no countervailing reason to seal the letter.  PIAM's proposed redactions to the Upper Brook Companies' memorandum of law in opposition to the motion to vacate, (Doc 28), and the Second Rutten Declaration, (Doc 29), apparently pertaining to the Report, are rejected for the same reason, (see Doc 36 at 19-22, 30, 35-36, 40).[5]

        3.   Summonses in the Foreign Proceedings

According to PIAM, a summons in a Dutch proceeding is "the equivalent of a complaint in US litigation" because it sets forth the factual and legal basis alleged in support of a claim.  (Doc 34 at 16.)  PIAM argues that, under Dutch law, summonses are "not publicly available and are considered confidential" and "documents pertaining to a counterclaim, such as a statement of defense, are not public documents."  (Id. at 16-17.)  However, de Keijzer's supporting declaration only states in conclusory terms that "any submissions exchanged between the parties, including the summonses, are not public documents."  (See Doc 20 ¶ 4.)  He cites no legal authority.  (See id.)

The Upper Brook Companies accuse PIAM of "knowingly and flatly misstat[ing] the law."  (Doc 37 at 4.)  The declaration from Rutten, their attorney in the Netherlands, states: "To my knowledge, the summons filed in the Dutch courts are not confidential or sealed and would not be confidential or sealed unless a specific application for that treatment had been requested and granted. PIAM has never sought any such treatment with respect to the pleadings filed in the Netherlands Proceedings or the Related Proceedings."  (Doc 29 ¶ 29.)  Once again,

---

[5] The redaction in paragraph 12 of the Second Rutten Declaration is also not narrowly tailored to any asserted countervailing interest.  (See Doc 36 at 36.)  The phrase describes one of the ways the Upper Brook Companies intend to use the requested discovery, which directly pertains to the relief sought and does not implicate any privacy or confidentiality interest of PIAM or any third parties.  It is merely an intention or allegation to which PIAM has had ample opportunity to respond.  See Amodeo II, 71 F.3d at 1051.  Further, the redaction of "the Dutch Prosecutor" in paragraph 27 of the Second Rutten Declaration does not serve any purpose.  (See Doc 36 at 40.)

the parties have offered conflicting views on the confidentiality of the documents and neither cites any definitive legal authority to support its assertions.

In addition, the Upper Brook Companies argue that the summonses and counterclaims are not confidential because they are discussed in public Dutch court decisions. (Doc 37 at 7.)  Those decisions do appear to describe the contents of the summonses and counterclaims, indicating that at least those particular excerpts are not confidential.  However, it does not follow that the underlying documents should be disclosed in their entirety.  Similarly, PIAM's failure to redact summaries of the summonses, (see Doc 18, Ex. 2 at 13-14), is not evidence that the entire documents are public.

To avoid the disclosure of documents that are potentially treated as confidential in the Netherlands, in the absence of a concrete showing to the contrary, the Court concludes that the summonses, (Doc 4, Exs. 5, 10), shall remain under seal.  However, while the summonses have not been publicly filed, the translation of PIAM's Statement of Defense has been available on the public docket since May 31, 2022.  As noted above, PIAM allowed one and a half months to pass before filing its Motion to Seal and has not alleged any harm resulting from the public availability of this document.  Accordingly, the translation of the Statement of Defense, (Doc 29, Ex. A), will remain unsealed.

The heading to PIAM's argument regarding this category also suggests it seeks to redact "information from the summonses" from "declarations and memoranda of law."  (See Doc 34 at 16.)  PIAM does not state which declarations and memoranda it refers to, and has sent this Court on a scavenger hunt for redactions pertaining to the summonses and counterclaims.  The Court has not been able to identify any relevant redactions in any of the declarations or the Upper Brook Companies' memorandum of law in opposition to the motion to vacate.  (See Doc

17

21; Doc 36.)  The redaction on page 11 of the Upper Brook Companies' memorandum of law in support of their application, (Doc 21 at 26), removes a quote from the summonses and is therefore warranted.

### 4. Correspondence with and Decisions by Cayman Islands Regulators

PIAM argues, in a conclusory manner, that the "Cayman Islands follow strict confidentiality laws" and that PIAM's license status and the correspondence between the Upper Brook Companies and the regulators is not public information.  (Doc 34 at 18; Doc 39 at 9.) Again, it cites no legal authority to support this position.  By contrast, the Upper Brook Companies submitted a declaration by Paul Kennedy, an attorney practicing in the Cayman Islands, stating that these documents do not breach any Cayman Islands confidentiality laws. (Doc 38 ¶¶ 1, 4.)  Mr. Kennedy's description of confidentiality requirements under Cayman Islands law, and his analysis of how that law applies to the documents at issue, is thorough and supported by legal authority.  (Id. ¶¶ 5-18.)

The Court concludes that PIAM has not demonstrated a countervailing confidentiality interest that overrides the presumption of public access.  The First Kennedy Declaration and Exhibits A and B thereto will be unsealed.

### 5. IMAs

PIAM asserts that the terms in the IMAs and fees PIAM charges should be filed under seal because they are "confidential, competitively sensitive trade secrets."  (Doc 34 at 19-21.)  As noted above, the need to protect confidential business information from disclosure can outweigh a presumption of public access.  Standard Inv. Chartered, Inc., 347 F. App'x at 617; Amodeo II, 71 F.3d at 1051.  Indeed, "courts have long recognized the protection of trade secrets as a justification for limiting public access to judicial documents."  Sylvania v. Ledvance LLC,

20-Civ-9858, 2021 WL 412241, at *2 (S.D.N.Y. Feb. 5, 2021) (citing <u>Amodeo I</u>, 44 F.3d at 147).

However, several key terms – including the fees PIAM charged – have already been made public in the Dutch court decisions that PIAM expressly concedes are non-confidential.  (<u>See</u> Miller Decl., Ex. 9 ¶ 3.1(ii) (describing Clause 7 and the fee PIAM charged); <u>id.</u>, Ex. 11 ¶¶ 3.3, 5.29, 5.47-5.49.)  PIAM may not now claim that such terms are confidential trade secrets, and it has not explained beyond conclusory assertions why it has an interest in maintaining the confidentiality of the remaining terms.

In addition, PIAM states that paragraph 9 of the IMAs "imposes a two-way duty of confidentiality" on the parties.  (Doc 34 at 19.)  Paragraph 9, however, states: "Neither the Fund nor Palladyne shall disclose information of a confidential nature acquired in consequence of this agreement . . . ."  (Doc 4, Ex. 6 ¶ 9; <u>id.</u> Ex. 7 ¶ 9.)  It does not expressly state that the agreement itself is confidential.  Accordingly, the Court concludes that the IMAs, (Doc 4, Exs. 6-8), shall be unsealed.

### 6.   Information Identifying PIAM's Bank Accounts

Finally, PIAM argues it has a "strong privacy interest" in protecting the name of its Dutch bank, "which is non-public information," and other information identifying its bank accounts and the manner in which it conducts its banking activities.  (Doc 34 at 21-22.)

PIAM has failed to demonstrate that the name of its Dutch bank is non-public information.  In support of this claim, it cites <u>Prescient Acquisition Group, Inc. v. MJ Publishing Trust</u>, 487 F. Supp. 2d 374 (S.D.N.Y. 2007).  In that case, this Court concluded that "a copy of two bank checks" should be sealed because they "reveal[ed] specific details of the manner in which [an individual] conduct[ed] his personal banking activities, <u>i.e.</u> the identity of the bank, the

authorized signature . . . , the address of the account and the form and appearance of the check."
Id. at 377.  PIAM neglects to mention, however, that the Court found sealing warranted because
the "information could be used to work a financial fraud" on the individual and others.  See id.
PIAM has not shown that disclosure of the name of its bank presents such a risk here.  In fact, it
has not identified any harm that would result from such disclosure.  Moreover, the bank name
has been publicly available since May 31, 2022, in the Upper Brook Companies' memorandum
in opposition to the motion to vacate, which further belies any claim of harm.  The Court
therefore rejects PIAM's proposed redactions of the name of its Dutch bank.

However, PIAM's account number and other identifiers that appear in the Upper
Brook Companies' application, (see Doc 21 at 7), the memorandum of law in support of their
application, (see Doc 21 at 24, 27), Exhibit 1 to the Miller Declaration, (see Doc 21 at 46), the
First Abbey Declaration (see Doc 21 at 231), Appendix B to the First Abbey Declaration, (see
Doc 21 at 241-43), and the First Rutten Declaration, (see Doc 21 at 274), shall be redacted.

In addition, the Court concludes that Exhibit B to the Second Rutten Declaration,
(Doc 29, Ex. B), should be sealed.  Despite the fact that it has been on the public docket for
many months, it contains detailed information about PIAM's finances and banking relationship
that could potentially be used to work a financial fraud on PIAM.  PIAM's asserted privacy
interest as to this document outweighs the negligible value it provides to the monitoring of the
federal courts.

CONCLUSION

The Motion to Seal is GRANTED in part and DENIED in part as described above
and summarized below.

The following documents shall remain under seal:
1. Exhibits 5 and 10 to the Miller Declaration, (Doc 4, Exs. 5, 10) (the Dutch Summonses);
2. Appendix C to the First Abbey Declaration, (Doc 5, App. C) (the Dutch Prosecutor's Report).

The Clerk shall remove from public view the following document:
1. Exhibit B to the Second Rutten Declaration, (Doc 29, Ex. B).

The Upper Brook Companies shall re-file on the public docket the following documents with the approved redactions noted below:
1. Upper Brook Companies' Ex Parte Application, (Doc 1), except that PIAM's bank account number shall be redacted, (see Doc 21 at 7);
2. Memorandum of Law in Support of Upper Brook Companies' Application, (Doc 3), except that PIAM's bank account number, (see Doc 21 at 24, 27), references to the content of the Dutch Prosecutor's Report, (see Doc 21 at 24), and the quote from the Dutch summonses, (see Doc 21 at 26), shall be redacted;
3. Exhibit 1 to the Miller Declaration, (Doc 4, Ex. 1), except that PIAM's bank account number, (see Doc 21 at 46), shall be redacted;
4. First Abbey Declaration, (Doc 5), except that PIAM's bank account number, (see Doc 21 at 231), and references to the content of the Dutch Prosecutor's Report in paragraphs 24-31 and footnotes 7 and 8, (see Doc 21 at 235-37), shall be redacted;
5. Appendix B to the First Abbey Declaration, (Doc 5, App. B), except that all account numbers and other identifiers shall be redacted;
6. First Rutten Declaration and Exhibit A thereto, (Doc 7; Doc 7, Ex. A), except that PIAM's bank account number, (see Doc 21 at 274), shall be redacted.

The Upper Brook Companies shall re-file the following documents on the public docket without redactions:
1. Miller Declaration and Exhibits 2-4, 6-9, and 11 thereto, (Doc 4; Doc 4, Exs. 2-4, 6-9, 11);
2. Appendix A to the First Abbey Declaration, (Doc 5, App. A);
3. First Kennedy Declaration and Exhibits A and B thereto, (Doc 6; Doc 6, Exs. A, B);
4. Miscellaneous Cover Sheet, (Doc 2);
5. Rule 7.1 Corporate Disclosure Statement, (Doc 8).

The following documents will remain unsealed (no action required):

1. Upper Brook Companies' Memorandum of Law in Opposition to Motion to Vacate, (Doc 28);
2. Second Rutten Declaration and Exhibits A and C thereto, (Doc 29; Doc 29, Exs. A, C);
3. Second Abbey Declaration and Exhibit A thereto, (Doc 30; Doc 30, Ex. A).

The Clerk is directed to terminate the motion.  (Doc 33.)  The Upper Brook Companies are directed to re-file their submissions on ECF in accordance with this Order within 14 days.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       January 12, 2023